**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

|                              |     |                          |
|------------------------------|-----|--------------------------|
|                              | :   |                          |
| STEVEN M.,                   | :   |                          |
|                              | :   |                          |
|   plaintiff,       | :   |                          |
|                              | :   |                          |
| v.                           | :   | Civil No. 3:22-cv-01455-RAR |
|                              | :   |                          |
| COMMISSIONER OF SOCIAL       | :   |                          |
| SECURITY,                    | :   |                          |
|                              | :   |                          |
|   defendant.       | :   |                          |

## RULING ON PENDING MOTIONS

Steven M. ("plaintiff") appeals the final decision of the Commissioner of Social Security ("the Commissioner" or "defendant") pursuant to 42 U.S.C. § 405(g). The Commissioner denied plaintiff's application for Social Security Disability Benefits in a decision dated June 30, 2021. Plaintiff timely appealed to this Court.

Currently pending before the Court are plaintiff's motion to reverse or remand his case (Dkt. #18-1) and defendant's motion to affirm the Commissioner's decision (Dkt. #20-1).

For the following reasons, the plaintiff's motion to remand or reverse is DENIED and the Commissioner's motion to affirm is GRANTED.

## PROCEDURAL HISTORY

Plaintiff initially filed for Supplemental Security Income under Title XVI of the Social Security Act on March 2, 2020,

with an alleged onset date ("AOD") of September 1, 2009. (R.
137.)  Following an initial denial on April 23, 2020, and upon
reconsideration on August 4, 2020, Administrative Law Judge
Ronald J. Thomas ("ALJ") held a hearing on February 16, 2021.
(R. 48-126.) After the hearing, ALJ Thomas issued a written
decision denying plaintiff's application on June 30, 2021. (R.
28-47.) Plaintiff thereafter sought review by the Appeals
Council, which was denied on September 22, 2022. (R. 1-7.)
Plaintiff then timely filed this action seeking judicial review.
(Dkt. #1.)

## STANDARD OF REVIEW

"A district court reviewing a final . . . decision [of the
Commissioner of Social Security] pursuant to section 205(g) of
the Social Security Act, 42 U.S.C § 405(g), is performing an
appellate function." Zambrana v. Califano, 651 F.2d 842, 844 (2d
Cir. 1981).[1] "The findings of the Commissioner of Social Security
as to any fact, if supported by substantial evidence, [are]
conclusive . . . ." 42 U.S.C. § 405(g). Accordingly, the Court
may not make a de novo determination of whether a plaintiff is
disabled in reviewing a denial of disability benefits. Id.;
Wagner v. Sec'y of Health and Human Servs., 906 F.2d 856, 860

---

[1]Unless otherwise indicated, in quoting cases, all internal
quotation marks, alterations, emphases, footnotes, and citations
are omitted.

(2d Cir. 1990). Rather, the Court's function is to ascertain whether the Commissioner applied the correct legal principles in reaching his conclusion, and whether the decision is supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 985 (2d Cir. 1987).

Therefore, absent legal error, this Court may not set aside the decision of the Commissioner if it is supported by substantial evidence. Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982). Further, if the Commissioner's decision is supported by substantial evidence, that decision will be sustained, even where there may also be substantial evidence to support the plaintiff's contrary position. Schauer v. Schweiker, 675 F.2d 55, 57 (2d Cir. 1982).

The Second Circuit has defined substantial evidence as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). Substantial evidence must be "more than a scintilla or touch of proof here and there in the record." Williams, 859 F.2d at 258.

The Social Security Act ("SSA") provides that benefits are payable to individuals who have a disability. 42 U.S.C. § 423(a)(1). "The term 'disability' means . . . [an] inability to engage in any substantial gainful activity by reason of any

3

medically determinable physical or mental impairment. . .." 42 U.S.C. § 423(d)(1). To determine whether a claimant is disabled within the meaning of the SSA, the Administrative Law Judge ("ALJ") must follow a five-step evaluation process as promulgated by the Commissioner.[2]

To be considered disabled, an individual's impairment must be "of such severity that he is not only unable to do his previous work but cannot . . . engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). "[W]ork which exists in the national economy means work which exists in significant numbers either in the region where such individual lives or in several regions of the country." Id.[3]

---

[2] The five steps are as follows: (1) the Commissioner considers whether the claimant is currently engaged in substantial gainful activity; (2) if not, the Commissioner considers whether the claimant has a "severe impairment" which limits his or her mental or physical ability to do basic work activities; (3) if the claimant has a "severe impairment," the Commissioner must ask whether, based solely on the medical evidence, the claimant has an impairment listed in Appendix 1 of the regulations. If the claimant has one of these enumerated impairments, the Commissioner will automatically consider him or her disabled without considering vocational factors such as age, education, and work experience; (4) if the impairment is not "listed" in the regulations, the Commissioner then asks whether, despite the claimant's severe impairment, he or she has the residual functional capacity to perform his or her past work; and (5) if the claimant is unable to perform his or her past work, the Commissioner then determines whether there is other work which the claimant could perform. The Commissioner bears the burden of proof on this last step, while the claimant has the burden on the first four steps. 20 C.F.R. § 416.920(a)(4)(i)-(v).

[3] The determination of whether such work exists in the national economy is made without regard to 1) "whether such work exists in the immediate area in which [the claimant] lives;" 2) "whether a specific job vacancy exists for [the claimant];" or 3) "whether [the claimant] would be hired if he applied for work." Id.

## **THE ALJ'S DECISION**

After applying the five-step evaluation process, the ALJ concluded that plaintiff was not disabled within the meaning of the Social Security Act since March 2, 2020, the date the application was filed. (R. 43.)

At step one, the ALJ determined that plaintiff had not engaged in substantial gainful activity since the application date of March 2, 2020. (R. 34.)

At step two, the ALJ found that plaintiff had the following severe impairments: "depressive disorder and anxiety and obsessive-compulsive disorder." (R. 34.)

At step three, the ALJ determined that plaintiff had no impairments or combination of impairments equal to a listed impairment. Specifically, the ALJ considered whether the severity of plaintiff's mental impairments met or medically equaled Listing 12.04 (depressive, bipolar and related disorders) or Listing 12.06 (anxiety and obsessive-compulsive disorders). (R. 34—36.) However, after a thorough analysis of assessments from state agency consultants, Dr. Christopher Leveille and Dr. Kelly Rogers, the ALJ concluded that plaintiff's medical records and other evidence in the record did not indicate sufficient symptomology to meet any of the identified Listings. (R. 34-36. (citing R. 275—76, 280—81, 311—13, 345, 355, 376, 405.))

Next, the ALJ determined that plaintiff had the residual functional capacity ("RFC") to

> perform a full range of work at all exertional levels but with the following nonexertional limitations: he can perform simple, routine and repetition work that does not require teamwork or working closely with the public. He can toleration occasional interactions with coworkers and supervisors, but no public interactions.

(R. 36.)   The ALJ relied on medical evaluations, treatment records, and plaintiff's testimony in establishing the RFC. (R. 36—41.) At step four, the ALJ concluded that plaintiff did not have past relevant work. (R. 41.) Lastly, at step five of the process, the ALJ determined that based on the testimony of a vocational expert, there were sufficient jobs available in the national economy that plaintiff could perform. Specifically, the ALJ identified the positions of laboratory equipment cleaner, cook helper, and kitchen helper. (R. 42.)

Upon the completion of the five-step sequential evaluation process, the ALJ determined that plaintiff was not under a disability since the date of application. (R. 43.)

## DISCUSSION

The plaintiff makes two primary arguments in support of his motion to reverse. First, plaintiff asserts that the ALJ erred in evaluating the persuasion of a state agency medical finding. (Pl. Br. 1—3.) Second, plaintiff argues that the ALJ erred in

its analysis of plaintiff's subjective complaints. (Pl. Br. 4—6.) The Court will address each issue in turn.

### 1. The ALJ Properly Considered the Dr. Rogers' Medical Findings

Plaintiff argues that the ALJ failed to properly consider Dr. Rogers' medical finding that plaintiff was limited to performing tasks of one or two steps. (Dkt. #18-1 at 3.)

The regulations provide that the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the plaintiff's] medical sources." 20 C.F.R. § 416.1920c(a). The ALJ will consider any medical opinions according to certain factors, including: (1) whether objective medical evidence supports and is consistent with the opinion; (2) the relationship between the medical source and claimant; (3) the medical source's specialty; and (4) other factors that "support or contradict a medical opinion[.]" Id. §§ 404.1520c(c), 416.920c(c). The ALJ must explain how he or she considered the "supportability" and "consistency" factors in the evaluation. 20 C.F.R. § 404.1520c(b), 416.920. But the ALJ need not explain how he or she considered secondary factors unless the ALJ finds that two or more medical opinions regarding the same issue are equally supported and consistent with the record but not identical. Id.

For the "supportability" factor, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative finding(s), the more persuasive the medical opinions or prior administrative finding(s) will be." Id. §§ 404.1520c(c)(1), 416.920c(c)(1). For the "consistency" factor, "[t]he more consistent a medical opinion(s) or prior administrative finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative finding(s) will be." Id. §§ 404.1520c(c)(2), 416.920c(c)(2).

In the event that a court does not find that the RFC determination was subject to a legal error, the issue will become one of substantial evidence. "[W]hether there is substantial evidence supporting the appellant's view is not the question here; rather, [the cout] must decide whether substantial evidence supports the ALJ's decision." Bonet v. Colvin, 523 Fed. Appx. 58, 59 (2d Cir. 2013)(summary order). Analogously, "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." Veino v. Barnhart, 312 F.3d 578, 588 (2d Cir. 2002).

The plaintiff argues that the ALJ erred in his evaluation of the persuasiveness of Dr. Rogers' medical opinion. (Dkt. #18-1 at 1—3.) The essence of plaintiff's argument is that the ALJ

failed to properly articulate the supportability and consistency
factors to support rejecting Dr. Rogers' opinion that plaintiff
was limited to one to two step tasks. (Dkt. #18—1 at 3.) In
response, the Commissioner argues that the ALJ did a sufficient
job of evaluating the opinion of Dr. Rogers, who acted as a
state agency consultant in relation to the plaintiff's mental
health. (Dkt. #20-1 at 3.) Specifically, the Commissioner
identified that there are medical opinions in the record, plus
other evidence in the records showing that the plaintiff, while
limited in some fashion, was not limited to one to two step
tasks. (Dkt. #20-1 at 3-7.)

     The Court reiterates that the ALJ determined that plaintiff
had the RFC to

> perform a full range of work at all exertional levels but
> with the following nonexertional limitations: he can
> perform simple, routine and repetition work that does not
> require teamwork or working closely with the public. He can
> toleration occasional interactions with coworkers and
> supervisors, but no public interactions.

(R. 36.) Plaintiff's challenge to this RFC determination relates
to the opinion provided by Dr. Rogers. Dr. Rogers' medical
opinion was issued in July of 2020. (R. 76—82.) The ALJ did an
initial review of both state agency medical opinions and the
supporting evidence when determining whether the plaintiff's
conditions met the Listing requirement in step 3. (R. 34—36.)
Dr. Rogers opined that plaintiff had "mild limitations in

9

understanding, remembering or applying information, moderate limitations in interacting with others and concentrating, persisting or maintaining pace and adopting or managing himself." ( R. 78—79.) In finding that the assessments of both Dr. Rogers and Dr. Leveille were of "some persuasiveness," the ALJ considered that the assessments relied on reports of plaintiff's improved mental health symptoms with treatment with continued avoidant and mood issues. (R. 34.)

The ALJ found that other evidence in the record supported the finding of mild limitations in the areas of understanding, remembering, or applying information. (R. 35.) The ALJ cites to medical records from 2018-2021. (R. 35.) These medical records show plaintiff presenting with good memory, above average intelligence, and normal cognition (R. 275-76, 280-81, 311-13, 345, 355, 359, 376, 405.) The plaintiff contends that the ALJ's analysis should be limited to evidence after March 2, 2020, the application date. (Dkt. #18-1 at 4). However, the records cited by the ALJ after the date of application continue to show the plaintiff presenting with good memory, above average to average intelligence, and normal cognition.[4] (R. 311-13, 376, 405.) Additional records show similar indications. (*See, e.g.*, R. 379, 407-08, 410.)[5]

_____

[5] Additional records, while helpful to justify the ALJ's decisions, were not required to be included in the decision. "An ALJ need not recite every piece

The ALJ also identified evidence in the record to support the finding of moderate limitations in concentrating, persisting, or maintaining pace. (R. 35.) Although an item from the record from April 2021 indicated problems with distractibility, that same medical evaluation highlights normal thoughts and cognition, above average intelligence, and good memory. (R. 405.) Further, while there are additional records indicating some problems with distractibility, the ALJ's findings are consistent with the substantial nature of records that show plaintiff presenting with focused demeanor, good attention and concentration skills, and logical and coherent thought processes. (R. 379, 405, 407-08, 410, 412.)

However, Dr. Rogers' medical opinion opined that the plaintiff would be able to perform tasks of one to two steps over the course of a normal work week. (R. 80). In evaluating the persuasiveness of this limitation, the ALJ indicated that it was inconsistent with the plaintiff's "longitudinal mental status examination presentation."[6] (R. 40). Specifically, the ALJ

---

of evidence that contributed to the decision, so long as the record 'permits [the court] to glean the rationale of an ALJ's decision.'" Cichocki v. Astrue, 729 F.3d 172, 176 (2d. Cir. 2013) (quoting Mongeur v. Heckler, 722 F. 2d 1033, 1040 (2d Cir. 1983).

[6] The ALJ adequately addressed his evaluation of conflicting evidence and the consistency of Dr. Roger's findings. "While an ALJ is entitled to reconcile conflicting evidence in the record, and need not address every last piece of medical evidence, the ALJ must provide a reviewing Court with a sufficient explanation to ensure that they have complied with the legal procedures controlling their decision and cannot ignore or mischaracterize evidence." Acosta Cuevas v. Comm'r of Soc. Sec., 20-CV-0502 (AJN)(KHP), 2021 WL 363682,

highlighted plaintiff's good memory, above average to average
intelligence, logical and coherent thought process, and focused
attention during various mental health examinations. (R. 40.
(citing R. 275—76, 280—81, 345, 355, 376, 405.))

Plaintiff asserts that the ALJ's reliance on these medical
observations is insufficient, as the evidence does not indicate
an ability to do more than one to two step tasks. The Court
disagrees. The record evidence cited by the ALJ relating to
plaintiff's mental health examinations is sufficient to
establish substantial evidence supporting the ALJ's
persuasiveness determination of Dr. Rogers' medical opinions.

Plaintiff cites to additional evidence in the record to
show that he suffered from mental health limitations. "However,
whether substantial evidence supports plaintiff's position is
not the question to be decided here. Rather, the question is
whether substantial evidence supports the ALJ's decision." Gina
C. v. Comm'r of Soc. Sec. Admin., No. 3:21CV00423(SALM), 2022 WL
167922, at *6 (D. Conn. Jan. 18, 2022). Based on the evidence in
the record, the Court concludes that there is substantial
evidence in the record to support the ALJ's decision.

---

at *10 (S.D.N.Y. Jan. 29, 2021), *report and recommendation adopted sub nom.*
Cuevas v. Comm'r Soc. Sec., 2022 WL 717612 (S.D.N.Y. Mar. 10, 2022).

**2. The RFC Determination is Supported by Substantial Evidence**

Plaintiff argues that the ALJ's analysis of plaintiff's subjective complaints in determining the RFC is unsupported by substantial evidence. (Dkt. #18—1 at 4).

When an individual's impairment does not meet or equal a listed impairment, the ALJ will "make a finding [of the individual's] residual functional capacity based on all the relevant medical and other evidence in [the] case record." 20 C.F.R. § 404.1520(e). An individual's RFC is the most an individual can still do despite his or her limitations. 20 C.F.R. § 404.1545(a)(1). Plaintiff has the burden of establishing a diminished RFC. *See* Butts v. Barnhart, 388 F.3d 377, 383 (2d Cir. 2004).

The RFC determination included specific limitations on plaintiffs' ability to work from a mental health standpoint. It stated in part, plaintiff "can perform simple, routine, and repetitious work that does not require teamwork or working closely with the public. He can tolerate occasional interactions with coworkers and supervisors, but no public interactions." (R. 37-39.) These limitations must consider the concerns raised by plaintiff and be supported by substantial evidence.

"The regulations provide a two-step process for evaluating a claimant's assertions of pain and other limitations. At the

first step, the ALJ must decide whether the claimant suffers
from a medically determinable impairment that could reasonably
be expected to produce the symptoms alleged." Genier v. Astrue,
606 F.3d 46, 49 (2d Cir. 2011) (citing 20 C.F.R. § 404.1529(b)).
"If the claimant does suffer from such an impairment, at the
second step, the ALJ must consider 'the extent to which [the
claimant's] symptoms can reasonably be accepted as consistent
with the objective medical evidence and other evidence' of
record." Genier, 606 F.3d at 49 (alterations in original)
(quoting 20 C.F.R. § 404.1529(b)).  "At the second step, 'the
ALJ must consider all of the available evidence, including
objective medical evidence, from both medical and nonmedical
sources.'" Sheila Renee H. v. Kijakazi, No. 3:21-CV-00944-TOF,
2022 WL 4181723, at *6 (D. Conn. Sept. 13, 2022)(quoting
Gonzalez v. Berryhill, No. 3:18-cv-00241 (SRU). 2020 WL 1452610,
at *12 (D. Conn. March 25, 2020)).

    "In determining whether [an individual is] disabled, [the
ALJ will] consider all [of an individual's] symptoms, including
pain, and the extent to which [his or her] symptoms can
reasonably be accepted as consistent with the objective medical
evidence and other evidence." 20 C.F.R. § 404.1529(a),
416.929(a). However, the ALJ is "not required to accept the
claimant's subjective complaints without question; [the ALJ] may
exercise discretion in weighing the credibility of the

14

claimant's testimony in light of the other evidence in the record." Genier, 606 F.3d at 49. The ALJ's findings regarding the severity of symptoms and evaluation of the plaintiff's subjective complaints "are entitled to great deference and therefore can be reversed only if they are patently unreasonable." Sheila Renee H, 2022 WL 4181723, at *7 (internal citations omitted) (quoting Pietrunti v. Dir., Office of Workers' Comp. Programs, 119 F.3d 1035, 1042 (2d Cir. 1997).

In evaluating the plaintiff's subjective statements regarding the intensity, persistence, and functionally limiting effects of his mental impairments, the ALJ cited treatment notes that showed a positive response to medication. (R. 37—39.) The ALJ concluded the positive response to medication and the plaintiff's reported daily activities were "inconsistent with a level of severity that would preclude him from performing any work activity." (R. 39.) Ultimately, the ALJ held that the plaintiff's statements regarding the intensity, persistence and functionally limiting effects of plaintiff's mental impairments were not consistent with other evidence in the record. (R. 37- 39.)

Plaintiff argues that the ALJ's findings regarding the intensity, persistence and functionally limiting effects of his mental impairments were not sufficiently developed. (Dkt. #18-1 at 4.) In making this argument, the plaintiff asserts that the

15

ALJ failed to properly evaluate plaintiff's alleged symptoms.
Specifically, plaintiff points to mood fluctuations, the nature
of his daily activities are not comparable to work, and claims
that improvements on medication were not maintained. (Dkt. #18-1
at 4—6.)

The Commissioner responds by asserting that the ALJ
properly found plaintiff's subjective complaints "were not
entirely consistent with the medical and other evidence." (Dkt.
#20-1 at 8.) Additionally, the Commissioner contends that
plaintiff's argument "overlooks the additional factors" the ALJ
factored into his decision. (Dkt. #20-1 at 9.) Namely, the
Commissioner points to the ALJ's additional consideration of
plaintiff's reluctance to pursue therapy and the state agency
psychological evaluations. (Dkt. #20-1 at 9—10.)

To the extent that the plaintiff is alleging error by the
ALJ in the evaluation of pain and symptoms, the Court disagrees.

Plaintiff argues that positive results from medications
were not maintained and highlights some instances of mood
fluctuations. (Dkt. #18-1 at 6.) The ALJ included an in-depth
review of medical treatment records that spanned three pages of
the decision. (R. 37—39.) In doing so, the ALJ considered the
various medications plaintiff had been prescribed, as well as
their dosages, effectiveness, and any side effects. (R. 37—39.)
Specifically, the ALJ notes that despite "some fatigue from his

16

medications," treatment notes show that plaintiff experienced
less anxiety, depression, and agoraphobia while on psychiatric
medications. (R. 39. (citing R. 304, 315—25, 329, 344, 348, 350,
358, 361, 371, 373.)) The ALJ determined that plaintiff's
positive response to medication, coupled with his reported
activity level, were not consistent with his allegations of the
inability to perform work. (R. 39.) Ultimately, the ALJ provided
a sufficient analysis of treatment notes and considered a
multitude of factors in evaluating the plaintiff's subjective
complaints.

### A. Activities of Daily Living

The ALJ also considered the plaintiff's daily activities,
reluctance to receive therapy, and inconsistent statements in
evaluating subjective complaints. (R. 39.) Plaintiff argues that
the use of daily activities in the analysis were improperly
considered. (Dkt. #18-1 at 5.) The Commissioner responded by
asserting that daily activities were one of multiple factors
considered by the ALJ. (Dkt. #20-1 at 9.)

Once a plaintiff establishes a medically determinable
impairment the ALJ "must then evaluate the intensity and
persistence of [the plaintiff's] symptoms so that [the ALJ] can
determine how [the plaintiff's] symptoms limit [their] capacity
for work." 20 C.F.R. § 404.1529(c)(1), § 416.929(c)(1). The

ALJ will consider medical and nonmedical evidence.  Id. at §
404.1529(c)(2)-(3), §416.929(c)(2)-(3).

"Factors relevant to [a claimant's] symptoms, such as pain,
which we will consider include: (i) [a claimant's] daily
activities; (ii) [t]he location, duration, frequency, and
intensity of [a claimant's] pain or other symptoms; . . . ."  20
C.F.R. at 404.1529(c)(3), §416.929(c)(3).  An ALJ may properly
determine that a claimant's complaints are inconsistent with the
record where medical evidence does not sufficiently demonstrate
disability and the plaintiff's daily activities demonstrate an
ability to perform work.  *See* Rusin v. Berryhill, 726 F. App'x
837, 840-41 (2d Cir. 2018).

In Rusin, the plaintiff alleged a disability of mental
impairment, yet the district court held that the objective
medical evidence did not support such assertions.  Id.[7]  The
plaintiff stated that he cooked simple meals for himself, left
the house daily, could drive, shop for groceries, walked for
exercise, occasionally spent time with friends, and watched
documentaries.  Id. at 840.  The Second Circuit determined that

---

[7] Specifically, the plaintiff in Rusin argued a disability under Listing 12.04
(depressive, bipolar and related disorders). However, the district court held
he was not disabled because he was "examined by multiple mental health
professionals who consistently noted that Rusin had normal speech, logical
thoughts, intact cognitive functioning and memory, fair judgment, and normal
attention." Rusin, 726 F. App'x at 840.

"these activities of daily living  [were] inconsistent with [the plaintiff's] complaints of total debilitation." Id. at 841.

Here, plaintiff asserts that the ALJ impermissibly equated daily activities with work. The Court disagrees. The ALJ determined that plaintiff's reported daily activity of washing and dressing himself, driving, using the microwave, watching sports, occasionally fishing, playing video games, hanging out with friends, and travelling to New York for a Knick's game in the past were a level of reported activity inconsistent with the inability to work. (R. 39.) But the ALJ's determination that plaintiff had the ability to work was not exclusively based on reported daily activities. Rather, the reported daily activity was evaluated in consideration with other evidence in the record and found to be inconsistent with the plaintiff's subjective complaints. The plaintiff's statements regarding the intensity, persistence and functionally limiting effects of his impairments were compared with the overall record of evidence. (R. 39.) Ultimately, the ALJ does not equate daily activity with work, but considered how the reported activity contributed to the evaluation of the plaintiff's reported symptoms. In doing so, the ALJ properly considered the plaintiff's reported daily activities.

Plaintiff argues that because the ALJ cited plaintiff's trip to New York City via train to attend a professional

19

basketball game, which was "three years prior," the ALJ did not have sufficient support for his conclusion on plaintiff's subjective symptoms. (Dkt. #18-1 at 3). However, the ALJ's determination was not made solely because of this fact. The ALJ considered all of the  reported daily activity from plaintiff's testimony, which provided sufficient evidence to support the ALJ's conclusion.

Plaintiff relies on a holding from Peter James L. v. Comm'r of Soc. Sec., No. 7:20-CV-09429-KMK-GRJ, 2022 WL 3928373 at *9 (S.D.N.Y. July 19, 2022), *report and recommendation adopted sub nom.* Lenz v. Comm'r of Soc. Sec., No. 20-CV-9429 (KMK), 2022 WL 3924966 (S.D.N.Y. Aug. 31, 2022), which was remanded in part because of how the ALJ evaluated the credibility of plaintiff's subjective complaints compared to a single medical evaluation. Specifically, the ALJ in that case cited the plaintiff's ability to attend to personal hygiene, cook, prepare food, perform simple household chores, and shop. Id. However, that plaintiff also suffered from daily panic attacks, crying spells, an inability to use public transportation, recurrent manic episodes, obsessive thoughts, memory problems, and avoidance of social situations. Id.

In this case, the ALJ noted mood fluctuations, social phobia, ruminating thoughts, and distractibility when addressing the credibility of plaintiff's reported symptoms. (R. 39 (citing

R. 297, 304—07, 315, 321, 326, 345, 348, 351—52, 359, 361, 371, 375, 405.) The ALJ subsequently relied on improved symptoms on medications and plaintiff's reported daily activities in his determination. (R. 39. (citing 304, 315—17, 344, 348, 350, 358, 361, 371, 373.)) In doing so, the ALJ found plaintiff's testimony that he was not socializing often or doing much during the day inconsistent with his reported activity. (R. 39.) Ultimately, comparing plaintiff's alleged symptoms with reported daily activities and other medical records is a proper analysis. The ALJ cited sufficient evidence to support the conclusion that plaintiff's subjective complaints were inconsistent with an inability to perform any work activity. Although some of the reported activities may be in accommodating environments, this does not preclude the ALJ's determination when it is supported by sufficient evidence. The ALJ sufficiently considered both medical and nonmedical evidence in evaluating the credibility of plaintiff's alleged symptoms.[8]

---

[8] The Commissioner points out that the ALJ also considered additional factors in his evaluation of plaintiff's subjective complaints, namely the plaintiff's reluctance to receive therapy. (Dkt. #20-1 at 9.) Plaintiff argues that there is no guarantee therapy would be effective. (Dkt. #21 at 2.) However, the ALJ permissibly included the fact that plaintiff reported no interest in therapy. (R. 39 (citing R. 336, 361.)) SSR 16-3p provides guidance on this consideration. "If the frequency or extent of the treatment sought by an individual is not comparable with the degree of the individual's subjective complaints, or if the individual fails to follow prescribed treatment that might improve symptoms, [the ALJ] may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record." Soc. Sec. Ruling ("SSR") 16-3P, 2017 WL 5180304, at *9 (S.S.A. Oct. 25, 2017).

The Court has reviewed the order of the Appeals Council and the ALJ's decision. The ALJ's decision properly evaluated and applied persuasiveness to the plaintiff's subjective complaints. Further, the RFC was supported by substantial evidence. A reviewing Court does not "decide the facts anew, nor [] reweigh the facts, nor [] substitute its judgment for the judgment of the ALJ. Rather, the decision of the ALJ must be affirmed if it is based upon substantial evidence even if the evidence would also support a decision for the plaintiff." Bellamy v. Apfel, 110 F. Supp. 2d 81, 87 (D. Conn. 2000). "Indeed, [t]he fact that [plaintiff] does not agree with [the ALJ's] findings, does not show that the ALJ failed to comply with the applicable standards." Gina C. v. Comm'r of Soc. Sec. Admin., No. 3:21CV00423(SALM), 2022 WL 167922, at *10 (D. Conn. Jan. 18, 2022). Here, although there may be evidence in the record to support plaintiff's position, there is nevertheless substantial evidence to support the ALJ's decision.

### CONCLUSION

For the foregoing reasons, plaintiff's motion to remand (Dkt. #18-1) is DENIED and the Commissioner's motion to affirm (Dkt. #20-1) is GRANTED.

This is not a recommended ruling. The consent of the parties allows this magistrate judge to direct the entry of a judgment of the district court in accordance with the Federal

22

Rules of Civil Procedure. Appeals can be made directly to the appropriate United States Court of Appeals from this judgment. See 28 U.S.C. § 636(c)(3).

SO ORDERED this 27th day of November 2023, at Hartford, Connecticut.

                                      /s/
                                Robert A. Richardson
                                United States Magistrate Judge